# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* O. FEDEWA, Minor.

UNPUBLISHED
December 11, 2018

No. 344063
Ingham Circuit Court
Family Division
LC No. 16-000325-NA

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Respondent appeals as of right the order of the trial court terminating his parental rights to his minor child pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. FACTS

In February 2016, petitioner, the Department of Health and Human Services, removed the child from his mother's home because she suffered from mental health issues and was threatening to commit suicide. Respondent indicated that he was not able to take care of the child on his own because of his work schedule, and the child, then two months old, was placed with the paternal grandparents. The court assumed jurisdiction over the child after respondent and the child's mother admitted to certain allegations, including that he was unable to care for the child, that he wanted the child to remain in relative placement with his parents until the child could be returned to the mother, and that criminal charges for domestic violence against the child's mother were pending against him. Respondent also admitted that he was aware of the mother's mental health concerns and had not safeguarded the child.

Thereafter, respondent refused to participate in services recommended by petitioner, other than supervised visitation with the child at his parents' home. After being ordered by the court, respondent completed a psychological evaluation, which resulted in a number of recommendations, including individual therapy to address his anxiety, depression, post-traumatic stress disorder (PTSD), and anger issues, participation in parenting classes, and a physician assessment for possible anti-anxiety medication. Respondent attended one session with a therapist, and two sessions with a second therapist, but then stopped attending. He indicated that he wanted to obtain a therapist of his own choosing, but failed to sign releases and failed to provide documentation that he was attending therapy. He did not participate in parenting classes, nor in recommended domestic violence classes, and his employment remained unverified.

-1-

After several months, the evidence indicated, and the child's mother agreed, that the child was unable to return to her care due to her mental health concerns. Respondent requested that the child be placed in a guardianship with the paternal grandparents. That option was considered by the parties and the trial court, but because the goal in the case remained reunification of the child with a parent, and because of the child's young age and need for permanency, petitioner did not favor a guardianship. The permanency planning goal therefore remained reunification until September 2017, when the court found that the goal of reunification was no longer appropriate and should be changed to guardianship.

In February 2018, the foster care specialist testified that the parents had not taken any substantial steps toward breaking down the barriers to reunification. The mother admitted that her mental instability would not allow the child to be placed in her care. Respondent had not complied with the treatment plan nor maintained regular contact with the foster care worker. The trial court agreed with petitioner's recommendation to change the goal to adoption.

At the time the trial court authorized the supplemental petition for termination of parental rights in March 2018, the child had been in relative placement for two years. At the termination hearing, petitioner presented evidence that respondent had failed to participate in individual therapy to address the barriers to reunification, had failed to attend parenting classes as recommended, and had failed to sign releases or provide documentation with respect to any services that allegedly he had obtained on his own. Respondent had not provided verification of his employment and was not providing support for the child. Respondent's mother testified that respondent visited the child regularly and was bonded to the child, but she did not believe that respondent would be able to handle the day-to-day care of the child. She had previously opposed a guardianship because of the mother's mental health issues, and she and her husband had not discussed the possibility of a guardianship if the mother's parental rights were terminated. She and her husband were willing to adopt the child if the parents' rights were terminated. The trial court found that the statutory grounds for termination were established by clear and convincing evidence and that a preponderance of the evidence established that it was in the child's best interests to terminate respondent's parental rights and allow the child to be adopted by the paternal grandparents.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Respondent argues that the statutory grounds for termination were not established by clear and convincing evidence. We disagree.

A trial court may terminate a parent's parental rights if it finds by clear and convincing evidence that one or more statutory grounds for termination have been established. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). This Court reviews for clear error the trial court's factual findings as well as its determination that a statutory basis for termination has been established by clear and convincing evidence. MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "A finding is 'clearly erroneous' if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App at 459.

In this case, the trial court found that grounds for termination had been established under MCL 712A.19b(3)(c)(*i*), (g), and (j), which permit termination of parental rights under the following circumstances, if demonstrated by clear and convincing evidence:

(c)   The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*)   The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g)   The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age. [1]

\* \* \*

(j)   There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Only one statutory ground for termination is necessary to support termination of parental rights. *In re HRC*, 286 Mich App at 461.

Here, the evidence showed that domestic violence was one of the factors that led to adjudication.  The child's mother testified that domestic violence was occurring in the relationship with respondent, and at the adjudication respondent admitted that allegations of domestic violence were pending against him.  The psychological evaluator recommended that respondent participate in individual therapy to address anxiety and anger issues.  The testimony at the termination hearing clearly established that respondent had failed to participate in these services.  Accordingly, the trial court did not clearly err by finding that the conditions that led to adjudication continued to exist and that termination was therefore supported under MCL 712A.19b(3)(c)(*i*).

Respondent also admitted at the adjudication that he could not provide proper care and custody for the child.  By the time of the termination hearing, the child had been in care for more than two years and respondent had failed to participate in recommended services to address the barriers to reunification, including parenting classes.  Although he claimed to have engaged in

---

[1] MCL 712A.19b(3)(g) has since been amended, effective June 12, 2018, by 2018 PA 58.

individual therapy on his own and to have taken an online parenting class, he refused to sign releases to enable petitioner to verify the information. Considering respondent's lack of cooperation and unwillingness to comply with recommended services, the court did not clearly err by finding that the barriers to reunification were not reasonably likely to be rectified, and that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable period of time. The evidence therefore supports the trial court's findings that termination of respondent's parental rights was justified under MCL 712A.19b(3)(g).

The evidence further supports termination under MCL 712A.19b(3)(j). The trial court found that aside from visiting regularly and parenting appropriately during his supervised visits with the child, there was no evidence that respondent complied with or benefited from the treatment plan. A parent's failure to comply with a treatment plan is evidence that the child may be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014). After two years, respondent had not completed parenting classes, had failed to participate in individual counseling, and continued to deny that he had any need for services. Although the paternal grandparents reported that his supervised visits with the child went well and that he acted appropriately with the child, there was no evidence of respondent's ability to care for the child on his own. The trial court did not clearly err by finding that the child was reasonably likely to be harmed if returned to respondent's home.

## B. BEST INTERESTS

Respondent also contends that the trial court erred in determining that termination of his parental rights was in the child's best interests. Specifically, respondent argues that the trial court failed to consider that the child was placed with relatives, and should have chosen the less-drastic measure of a guardianship with those relatives rather than termination. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review the trial court's decision regarding the child's best interests for clear error. *In re White*, 303 Mich App at 713.

In determining the child's best interests, the trial court should weigh all the evidence available, and should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

-4-

Respondent correctly notes that a child's placement with relatives is a factor that the trial court is required to consider, and this factor generally weighs against termination. *In re Mason*, 486 Mich at 164. In that regard, MCL 712A.19a(8)(a) provides:

> If the court determines at a permanency planning hearing that a child should not be returned to his or her parent, the court may order the agency to initiate proceedings to terminate parental rights. Except as otherwise provided in this subsection, if the child has been in foster care under the responsibility of the state for 15 of the most recent 22 months, the court shall order the agency to initiate proceedings to terminate parental rights. The court is not required to order the agency to initiate proceedings to terminate parental rights if 1 or more of the following apply:
>
> (a) The child is being cared for by relatives.

Thus, MCL 712A.19a(8)(a) "expressly establishes that, although grounds allowing the initiation of termination proceedings are present, initiation of termination proceedings is not required when the children are 'being cared for by relatives.'" *In re Mason*, 486 Mich at 164. MCL 712A.19a(8)(a) does not preclude termination, however, simply because a child is placed with relatives; rather placement with relatives is a factor to be considered by the trial court when determining the best interests of the child.

In this case, the trial court did consider the child's placement with relatives when determining the best interests of the child. The trial court also considered the advantages to the child in that placement, the grandparents' willingness to adopt the child, the child's need for permanence, and respondent's lack of effort or progress toward reunification. The trial court stated, in pertinent part:

> Regarding the best interest of the child, there is apparently a bond between the father and the child and it appears to be significant. The child is very young. . . . He was removed from his biological parents very early and has been with the paternal grandparents continuously since then. It does appear that the father has some parenting ability, although he did not ever engage in parenting classes where he may have learned, if he had done that, how damaging the [e]ffects of domestic violence are on a child. This child needs permanence, stability, and finality.
>
> There are many advantages for him in his foster home. He's being well cared for in that home. He's bonded to his caregivers. There is a possibility of adoption in that home.
>
> The psychological evaluation of the father by Doctor Lowder, which he obtained on his own and submitted to the court, does indicate problems. It's an unfavorable psychological exam. The father has continued to engage in a relationship involving domestic violence. He hasn't had much contact with the foster care worker. His independent housing and income cannot be verified.

There's no testimony he provides financial support for the child. So there's no progress, no discernible effort by the father.

Therefore, it is in the best interest [of the child] for the court to terminate his parental rights and free this child for adoption by his caregivers where he has his major bond, and those are the people he looks to to have his needs met.

Thus, contrary to respondent's assertions on appeal, the trial court did consider the child's relative placement with the grandparents when determining the child's best interests. The court found that the child was bonded to the grandparents, that he looked to them to have his needs met, that he was excelling in his environment, and that the grandparents were willing to adopt him. The court considered that the child had a strong bond to respondent, but also respondent's failure to make any effort toward reunification with the child. The trial court also noted the child's need for permanence, stability, and finality. We conclude that the trial court did not clearly err in finding that termination of respondent's parental rights was in the child's best interests.

Respondent also argues that the trial court erred by failing to consider a guardianship with the paternal grandparents in lieu of terminating his parental rights. Again, we disagree. A guardianship may be established in an effort to avoid termination of parental rights. *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014); see also *In re Mason*, 486 Mich at 168-169. MCL 712A.19a(4) states, in relevant part:

At or before each permanency planning hearing, the court shall determine whether the agency has made reasonable efforts to finalize the permanency plan. At the hearing, the court shall determine whether and, if applicable, when the following must occur:

(a) The child may be returned to the parent, guardian, or legal custodian.

(b) A petition to terminate parental rights should be filed.

(c) The child may be placed in a legal guardianship.

(d) The child may be permanently placed with a fit and willing relative.

Respondent argues that because the child's mother intended to release her parental rights at the time of the termination hearing, the grandparents were willing to consider becoming guardians for the child and that the trial court should have taken this into consideration in determining the child's best interests. We note that the factual premise of respondent's argument regarding the grandparents' wiliness to provide a guardianship for the child is misplaced. The grandmother testified at the termination hearing that she and her husband were not in favor of a guardianship because of the mother and her mental health issues, and that she and the child's grandfather had not yet talked about whether they would consider a guardianship if the mother's rights were terminated. Moreover, the trial court determined that termination was in the child's best interests in light of the child's need for permanence, the willingness of the grandparents to adopt him, and respondent's failure to make any effort to regain custody of the child. Again, we

conclude that the trial court did not clearly err in finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Michael F. Gadola